IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(CHARLOTTE DIVISION)
Civil Action No. 3:18-cv-330

| | |
|---|---|
| SYMMETRY FINANCIAL GROUP, LLC,<br><br>*Plaintiff,*<br><br>vs.<br><br>ZACHARY EGAN,<br><br>*Defendant.* | **VERIFIED COMPLAINT** |

NOW COMES Plaintiff Symmetry Financial Group, LLC ("Plaintiff" or "Symmetry"), complaining of the Defendant, Zachary Egan, as follows:

## PARTIES AND JURISDICTION

1. Plaintiff is a North Carolina Corporation with its principal place of business in Buncombe County, North Carolina.

2. Defendant Zachary Egan is an adult citizen that resides, upon information and belief, in the State of Utah.

3. The facts of this Complaint concern, *inter alia*, an Agency Manager Ownership Agreement (attached hereto as Exhibit 1), which contains a forum selection clause (¶ 17) that binds the parties to litigate this dispute in either the state courts of North Carolina or the courts of the United States sitting in North Carolina.

4. Therefore, jurisdiction and venue are proper.

1

5. Furthermore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

6. Symmetry is an Independent Marketing Organization ("IMO") to various insurance companies, known as carriers. Through Symmetry's relationship with its various carriers, Symmetry's network of independent contractor insurance agents (its "agents") are able to sell various insurance policies, on behalf of the underwriting carriers, to Symmetry's customers across the country.

7. Symmetry recruits and trains its agents, including the Defendant, to sell insurance for Symmetry's carriers. The recruitment and training of each Symmetry agent is a significant expense and investment by Symmetry. Symmetry also assists its agents, including the Defendant, in becoming qualified representatives of the carriers.

8. Defendant and Symmetry's other agents work under contracts with both Symmetry and its carriers to sell insurance products for the carriers. Defendant and Symmetry's other agents earn commissions from Symmetry's carriers for the products sold for the carriers. Symmetry also earns commissions based on the sales by its agents.

9. Some agents, including the Defendant, are also paid bonuses directly from Symmetry for their work.

10. Symmetry also provides sales leads (contact information for people who have expressed interest in buying insurance) to its agents, including the Defendant, also at significant expense and investment by Symmetry.

11. Symmetry allows its agents to recruit additional Symmetry agents to be on their team. Any agents recruited by a Symmetry agent are referred to as a "Downline Agents" for the agent who recruits them (the "Upline Agent"). Upline Agents also earn commissions based on the sales of their Downline Agents.

12. Defendant had Downline Agents when he worked with Symmetry.

13. When Defendant first contracted with Symmetry, as with every new agent, the parties executed an independent contractor agreement on September 19, 2016 (attached hereto as <u>Exhibit 2</u>), which provided, among other things, for the payment of various commissions to Defendant on the sale of insurance products in exchange for Symmetry's training and connections through its carrier contracts.

14. Then, on September 1, 2017, the parties executed an Agency Manager Ownership Agreement ("AMOA") which provided Defendant, *inter alia*, an agreement by Symmetry that Symmetry would not terminate Defendant without cause and that Defendant could transfer the business he created in connection with his work for Symmetry upon certain conditions.

15. In exchange for the above and the other consideration recited in the AMOA, Defendant agreed to, among other things, a non-solicitation provision prohibiting certain activities. More specifically, during the term of the AMOA and for two years after any termination Defendant agreed, among other things, not to:

3

a. induce or attempt to induce any of Symmetry's agents to sever their relationship with Symmetry;

   b. advise or recommend to any other person or entity that they engage or attempt to engage any Symmetry agents that worked with Symmetry during the term of the AMOA and for two years after termination; and

   c. establish or seek to establish a business relationship relating to the sale of insurance products with any Symmetry agents that worked with Symmetry during the term of the AMOA and for two years after termination (and specifically including Defendant's Downline Agents).

(AMOA p. 8, Exhibit 1). The non-solicitation clause is hereby incorporated by reference.

16. The purpose and intent of the non-solicitation agreement was to protect Symmetry's book of business fostered through its knowledge, resources, contracts, connections, and education of its agents.

17. Defendant resigned as an agent for Symmetry on or about May 18, 2018, effectively terminating his relationship with Symmetry. Pursuant to the express terms of the AMOA, Defendant's non-solicitation obligations survive that termination.

18. At or around the same time, Defendant began working for a Symmetry competitor, another IMO called Family First Life, LLC ("Family First").

19. Subsequently, and in violation of the explicit non-solicitation provisions of the AMOA, Defendant recruited and poached certain Downline Agents and other

4

agents to work with Defendant for Family First. For example, Defendant recruited and poached the following Symmetry agents in breach of the AMOA: Trae Powers, Aaron Baker, Amanda Gealy, Kristopher Jensen, Scott Atkinson, Amir Ali Farkhar, Omid Malek, Michael Brock Acord, Valentino Winters, and said individuals' own Downline Agents.

20. Defendant ultimately recruited and poached almost his entire network of Symmetry Downline Agents and their Downline Agents to work with Defendant at Family First, thereby poaching a large part of Symmetry's network – a source of immeasurable financial benefit – all in breach of the express terms of the AMOA. Upon information and belief, Defendant receives shares of the commissions generated by all of those Symmetry agents he poached that now work with him at Family First.

21. The AMOA recognizes that breaches of the non-solicitation covenants will cause irreparable harm, in which case Symmetry would be entitled to liquidated damages.

22. Pursuant to Paragraph 16 of the AMOA, a violation of the non-solicitation agreement entitles Symmetry to liquidated damages in an amount equal to the total of payments and commissions paid to Symmetry by its carriers in the twenty-four months preceding the breach, in connection with sales made by Defendant and his web of Downline Agents and their Downline Agents, which Plaintiff currently estimates exceeds $250,000.00.

5

23. Defendants' recruitment and/or poaching of Symmetry agents and Defendant's Downline Agents and their Downline Agents, and encouragement of said agents to discontinue their relationships with Symmetry, was done with malice and to gain an unfair and competitive advantage. The purpose of recruiting a large network of Symmetry agents, in knowing violation of the AMOA, appears to be to misappropriate the commercial competitive advantage Symmetry built when it expended large amounts of time and money to develop and train its network of agents.

24. Defendant is currently receiving extensive financial benefit by utilizing the training and development costs incurred by Symmetry by simply taking Symmetry's agents and business.

## FIRST CAUSE OF ACTION
### Breach of Contract – AMOA ¶14

25. The above paragraphs are hereby incorporated by reference.

26. As discussed above, the Defendant has violated certain provisions of the AMOA, namely all five parts of the non-solicitation provision by causing Symmetry agents to terminate their contracts with Symmetry and work with its competitor Family First, some or all of which have joined Defendant's network of agents such that Defendant receives commissions on their sales.

27. Such actions by Defendant, as stated above, and more specifically in engaging in outside business relations with Symmetry agents, encouraging said agents to terminate their contracts with Symmetry, and otherwise poaching Symmetry

6

agents for Defendant's and Family First's financial benefit are the exact actions intended to be prevented with the AMOA's non-solicitation agreement.

28. Symmetry has suffered damages as a result of Defendant's breach, such damages being in excess of $75,000.00.

29. In addition, Symmetry has suffered irreparable harm as a result of Defendant's breach. Such damages are ongoing and cannot be fully remedied with monetary damages and Symmetry is entitled to liquidated damages in accordance with the AMOA, ¶16. Symmetry is entitled to temporary and permanent injunctive relief against the Defendant requiring the Defendant to comply with his contractual obligations, including those prohibiting solicitation of Symmetry agents.

30. Pursuant to the terms of the AMOA, ¶19, Symmetry is also entitled to recover from Defendant its costs, including attorneys' fees, incurred in seeking to enforce the AMOA.

## SECOND CAUSE OF ACTION
### Tortious Interference with Contract and Business Relationships

31. The above paragraphs are hereby incorporated by reference.

32. As stated above, Defendant has interfered with Symmetry's contractual and business relationships with its agents. After severing its relationship with Symmetry, Defendant's network of agents has also sold insurance to individuals/entities that would have otherwise purchased through a Symmetry agent, thus interfering with the contractual and business relationship with Symmetry's clients and prospective clients.

7

33. Such conduct was/is wrongful, was not motivated by a legitimate business purpose, and was intended to give Defendant an unfair competitive advantage.

34. The foregoing conduct constitutes tortious interference with Symmetry's contractual and business relationships. Symmetry has been damaged as a result of such conduct and is entitled to monetary and injunctive relief to address such past and ongoing conduct.

35. Due to the intentional and willful nature of Defendant's conduct, Symmetry is entitled to an award of punitive damages in an amount to be established by the finder of fact.

## THIRD CAUSE OF ACTION
### Tortious Interference with Prospective Business Relationships

36. The above paragraphs are hereby incorporated by reference.

37. But for the wrongful recruitment by Defendant of Symmetry agents, the recruited agents would have continued to serve as Symmetry agents and, in that capacity, would have continued to sell insurance offered by Symmetry's carriers.

38. Defendant's conduct has thereby interfered with Symmetry's business with those agents and future customers.

39. The foregoing conduct constitutes tortious interference with Symmetry's prospective business relationships. Symmetry has been damaged as a result of such conduct, and is entitled to monetary and injunctive relief to address such past and ongoing conduct.

40. Due to the intentional and willful nature of Defendant's conduct, Symmetry is entitled to an award of punitive damages in an amount to be established by the finder of fact.

## FOURTH CAUSE OF ACTION
### Unfair and Deceptive Trade Practices/Unfair Competition

41. The above paragraphs are hereby incorporated by reference.

42. The timing and wrongful purpose evidenced by Defendant's large scale recruitment and hiring of Symmetry's agents, in breach of the AMOA, shows that Defendant has converted Symmetry's business without consent.

43. Such conduct was unfair, deceptive, and reasonably calculated to handicap Symmetry to the benefit of Defendant. Such conduct wassunethical and designed to misappropriate Symmetry's commercial competitive advantage obtained through years of time, money, and labor.

44. Symmetry built up its business through the expenditure of time, money, effort, *to wit*, the ongoing training of its agents, connecting them to carriers, and providing them with ongoing leads and support. Considering that Defendant is knowingly inducing large numbers of Symmetry agents to defect, Defendant's purpose is to take Symmetry's business and avoid such expenditures.

45. Defendant's misconduct has caused and will continue to cause substantial, immediate and irreparable injury to Symmetry in an amount that cannot presently be determined or cannot be fully quantified. Symmetry has no adequate remedy at law to redress Defendant's deception and unfair competition.

46. Symmetry has been damaged as a result of such conduct and is entitled to monetary and injunctive relief to address such past and ongoing conduct.
47. The foregoing conduct was willful and was intended to inflict harm on Symmetry. Accordingly, Symmetry is entitled to exemplary damages in an amount to be established by the finder of fact.

WHEREFORE, Plaintiff Symmetry Financial Group, LLC, prays that the Court:

1. Award temporary and permanent injunctive relief against Defendant enjoining future violations of the Agency Manager Ownership Agreement;
2. Award it such damages as may be proved at trial, in an amount in excess of $75,000.00;
3. Award it liquidated damages as provided in the Agency Manager Ownership Agreement in an amount as proved at trial;
4. Award it exemplary/treble damages and/or punitive damages, whichever is greater;
5. Award it costs and attorneys' fees pursuant to the terms of the Agency Manager Ownership Agreement or as otherwise allowed by law;
6. Award prejudgment and post-judgment interest; and
7. Make any other rulings that the Court deems just and proper.

This the 22nd day of June, 2018.

/s/ Derek P. Adler
Derek P. Adler – NC State Bar #39488
*Attorney for Plaintiff*

DeVORE, ACTON & STAFFORD, P.A.
438 Queens Road
Charlotte, NC 28207
(704) 377-5242
(704) 332-2825 facsimile
*dadler@devact.com*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(CHARLOTTE DIVISION)
Civil Action No. 3:18-cv-_____

| | |
|---|---|
| SYMMETRY FINANCIAL GROUP, LLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>ZACHARY EGAN,<br><br>*Defendant*. | **VERIFICATION** |

NOW COMES BRIAN POPE, after being first duly sworn, deposes and says:

That he is a representative of the Plaintiff in the foregoing action; that he has reviewed the Complaint in this matter; including all records and documents relating to the allegations contained in the Complaint; that the same is true of his own knowledge or belief, except as to those matters and things stated upon information and belief, and as to those matters and things, he believes them to be true.

This the 22 day of June, 2018.

_____
BRIAN POPE

COUNTY OF Washoe

STATE OF Nevada

SWORN to and subscribed before me this 22nd day of June, 2018.

_____(SEAL)
Notary Public
My Commission Expires: 10/05/2020

ZULEIKA JIMENEZ
Notary Public - State of Nevada
Appointment Recorded in Carson City
No: 16-3871-3- Expires October 5, 2020